**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0293-24

DEBATE COACHING
ACADEMY LLC, a Delaware
limited liability company,

      Plaintiff-Respondent,

v.

BERGEN COUNTY DEBATE
CLUB, LLC, a New Jersey
limited liability company and
VLAD SAVRANSKY and
OKSANA SAVRANSKY,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

TOM EVNEN,

      Third-Party
      Defendant/Respondent.

_____

Submitted February 10, 2025 – Decided June 25, 2025

Before Judges Gummer, Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000066-24.

A.Y. Strauss, LLC, attorneys for appellants (Ross A. Fox, on the briefs).

Stark & Stark, attorneys for respondents (Scott I. Unger, of counsel and on the brief).

PER CURIAM

This appeal stems from a commercial dispute between two corporate entities and a private individual, Tom Evnen, who executed a personal guaranty, arising out of a failed business acquisition. The resolution of this matter is complicated by the parties' reliance on multiple agreements, whose terms diverge regarding the appropriate forum for resolving disputes. Because we conclude the trial court's order compelling arbitration was within its sound discretion, we affirm in that respect. However, we vacate the trial court's order dismissing defendant's counterclaim and third-party complaint in conjunction with arbitration and instead direct the matter be stayed until arbitration is completed.

I.

On February 2, 2023, the Bergen County Debate Club, LLC ("BCDC" or "defendant") and its owners Vlad and Oksana Savransky (collectively "BCDC

2

A-0293-24

Parties" or "defendants")[1] sold their family-owned business to Debate Coaching Academy LLC ("DCA" or "plaintiff") for the sum of $1,540,000. The transaction was formalized through the execution of an Asset Purchase Agreement (APA) and several ancillary agreements. The ancillary agreements included a promissory note detailing a repayment obligation of $1,275,000 following a $265,000 deposit, as well as a license agreement, a noncompete agreement, a consulting agreement, and a personal guaranty covering the unpaid portion of the purchase price. Unlike the ancillary agreements, the APA contained a provision requiring all disputes be resolved through arbitration. In pertinent part, it reads:

> Any dispute, controversy, or claim arising out of or relating to this Agreement not resolved by mutual agreement of Buyer and Seller shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association to be held in [Trenton,] New Jersey.

In contrast, the promissory note contains a forum-selection clause, designating "any state court sitting in Bergen County, New Jersey or any federal court sitting in New Jersey" as the forum:

> This Promissory Note is made under and governed by the laws of, and shall be deemed to have been executed

---

[1] Inasmuch as all parties bear the same surname, we use their first names for clarity, meaning no familiarity or disrespect.

A-0293-24

in, the State of Delaware without giving effect to choice of law principles . . . .  Borrower and Lender hereby irrevocably consent to the jurisdiction of any state court sitting in <u>Bergen County, New Jersey or any federal court sitting in New Jersey</u> in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking.

[(Emphasis added).]

Should there be "a conflict or inconsistency" between terms of the APA and the promissory note, the promissory note provides:

This Promissory Note is made in connection with that certain [APA] dated of even date herewith . . . . <u>In the event of a conflict or inconsistency between the terms of this Promissory Note and the [APA], the terms and provisions of the [APA] shall govern</u> . . . .

[(Emphasis added).]

Similarly, the consulting agreement states in pertinent part:

Terms used in this Agreement, including in its preamble and recitals, but not otherwise defined herein shall have the meanings given to them in the Asset Purchase Agreement. <u>In the event of any conflict between the provisions of the Consulting Agreement and the [APA] with respect to the rights of the Parties, the provisions of the [APA] shall prevail</u>.

[(Emphasis added).]

A-0293-24

Litigation Initiated

Paragraph 4(a) of the promissory note requires DCA to operate BCDC "substantially the same as" defendants had operated the business prior to consummation of sale. But, according to defendants, shortly after the sale, DCA violated this provision by operating BCDC in a manner inconsistent with original business operations. Alleged changes to the business operations included raising tuition prices by as much as thirty-five percent over two semesters, offering online coaching that had not previously been part of BCDC's core services except during the COVID-19 pandemic, teaching students younger than ten years old, and re-branding services under the name "Denver Debate." The BCDC Parties also discovered that DCA had engaged in financial practices they deemed predatory, such as eliminating free trial programs, implementing non-refundable payment structures, and failing to provide required quarterly financial reports and annual access to business records and tax returns as mandated by Section 4(a) of the promissory note. The BCDC Parties also alleged DCA had breached the consulting agreement by ceasing to engage Vlad and Oksana Savransky's consulting services after March 20, 2023, effectively terminating the consulting agreement before its scheduled end date of February 2, 2024. Finally, DCA allegedly breached the license agreement by opening

5

BCDC franchises without offering the BCDC Parties a franchise right of first refusal.

The BCDC Parties posited that alleged breaches of the promissory note triggered default provisions nullifying the license and noncompete agreements. On receiving notice of these purported breaches, DCA declined to cure them by either offering franchise rights and royalties to the BCDC Parties or shutting down the unauthorized franchise locations. Instead, DCA contended the BCDC Parties were themselves in breach of the APA by withholding certain assets conveyed in the sale, including internet domain names, social-media accounts, and client lists.

On May 5, 2023, the BCDC Parties issued to DCA an initial notice of the alleged defaults arising from the above-referenced violations of provisions set forth in the promissory note. Subsequent notices were sent in June and July of 2023, reiterating the alleged breaches. On June 10, 2023 the BCDC Parties also demanded DCA update the BCDC website to reflect that Oksana Savransky was no longer involved in the business's operations. DCA took no corrective action, purportedly leading students and parents to believe she remained involved in BCDC's management. Defendants claimed this omission caused reputational damage to both BCDC and Oksana, particularly because parents and students

6

associated Savransky with the tuition increases, the elimination of free trial programs, and other unfavorable changes made by DCA.

Because DCA was similarly dissatisfied with the BCDC Parties' alleged failure to perform their contractual obligations, it filed a complaint in the Law Division in June 2023. In addition to alleging the BCDC Parties had breached the APA by withholding internet domain names, social-media accounts, and client lists, DCA asserted that they further violated the APA by refusing to transfer those assets until sixty-six percent of the promissory note had been paid and by attempting to solicit clients and personnel affiliated with DCA.

Arbitration Clause

BCDC moved to dismiss DCA's complaint and compel arbitration, arguing that the APA contained a broad arbitration clause that covered all disputes "arising out of or related to" the APA, including those related to the promissory note. The Law Division agreed with BCDC's position, ruling on October 25, 2023, that the arbitration provision in the APA compelled arbitration of all disputes. In a written opinion, Judge Gregg A. Padovano ("Padovano Order") emphasized that the promissory note provides: "[i]n the event of a conflict or inconsistency between the terms of the promissory note

and the [APA], the terms and provisions in the [APA] shall govern."  Neither party moved for reconsideration nor appealed this order.

Notwithstanding the Padovano Order compelling arbitration, DCA filed an order to show cause supported by a verified complaint on April 8, 2024, in the Chancery Division, seeking injunctive relief for alleged violations of the parties' noncompete agreement.  Consistent with the Padovano Order, in April 2024, DCA also filed a demand for arbitration against the BCDC Parties.

The order to show cause was scheduled for a hearing before Judge Darren T. DiBiasi.  In response, the BCDC Parties filed an answer with counterclaims and a third-party complaint against Evnen, the personal guarantor of the promissory note, along with opposition to the requested injunctive relief.

On May 15, 2024, Judge DiBiasi granted a preliminary injunction, restraining the BCDC Parties from engaging in any business activities deemed competitive with DCA, in accordance with the terms of the noncompete agreement.  The judge also entered a preliminary discovery and scheduling order concerning DCA's complaint alleging breaches of the noncompete agreement.  Notably, unlike the promissory note, the noncompete agreement contains no provision specifying that, in the event of conflict, the APA's terms shall prevail.

A-0293-24

Thereafter, on June 7, 2024, DCA and Evnen moved to dismiss the counterclaim and third-party complaint and compel arbitration consistent with the Padovano Order. Following a hearing on August 2, 2024, Judge DiBiasi granted the motion, citing the Padovano Order and directing the parties to proceed to arbitration. The judge found:

> Now, the Law Division's analysis [the Padovano Order], the [c]ourt finds, applies to plaintiff's current motion to dismiss. Defendant's claims center around plaintiff's breach of the promissory note. The promissory note and the [APA] must be read together. The [APA] compels arbitration, and New Jersey law favors arbitration as a means of resolving disputes.
>
> Arbitration provisions are liberally upheld. That's the case of Marchak v. Claridge Commons, 134 N.J. 275 [(1993)]. The [c]ourt is going to uphold this arbitration provision and honor the [c]ourt's previous decision in the Law Division. Plaintiff's motion is granted. The modification that it is not a dismissal with prejudice of the third-party claims; it's a motion to dismiss to compel arbitration.

Rather than appeal the August 2, 2024 order, the BCDC Parties filed an amended counterclaim and third-party complaint, reasserting identical claims but omitting explicit references to the APA. In response, DCA again moved to dismiss the amended pleadings, compel arbitration, and enforce the May 15, 2024 order. Four days later, the BCDC Parties filed an order to show cause seeking to modify the May 15, 2024 order and obtain injunctive relief against

9

DCA and Evnen. The BCDC Parties successfully secured a temporary restraining order and a preliminary injunction against DCA to compel it to issue a press release and correct misinformation on the website.

On September 27, 2024, Judge DiBiasi granted DCA's motion to dismiss the BCDC Parties' amended pleadings, reaffirming that BCDC's claims, which stemmed from the APA and the promissory note, were subject to the arbitration clause. The judge emphasized that arbitration had already been ordered by the Law Division in the Padovano Order, as well as the August 2, 2024 order.

The BCDC Parties then filed this appeal. The BCDC Parties filed an order to show cause seeking to stay the arbitration and proceedings in the Chancery Division pending appeal and on October 3, 2024 Judge DiBiasi entered an order temporarily staying the arbitration until resolution of this appeal.

II.

An interpretation of a contract, including an arbitration agreement, is reviewed de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). When parties enter in a contract, and if "the terms of a contract are clear, it is the function of a court to enforce it as it is written and not to make a better contract for either of the parties . . . ." McMahon v. City of Newark, 195 N.J. 526, 545 (2008). In the absence of an

express arbitration clause, a dispute cannot be compelled to arbitration. <u>Alamo Rent A Car, Inc. v. Galarza</u>, 306 N.J. Super. 384 (App. Div. 1997).

Appellate courts review trial courts' decisions to invoke judicial estoppel for an abuse of discretion. <u>Terranova v. GE Pension Tr.</u>, 457 N.J. Super. 404, 410 (App. Div. 2019). An appellate court reviews de novo a decision on res judicata and collateral estoppel. <u>Selective Ins. Co. v. McAllister</u>, 327 N.J. Super. 168, 173 (App. Div. 2000).

## III.

### A.

On appeal, the BCDC Parties assert that their amended counterclaim and third-party complaint are based solely on alleged violations of the ancillary agreements and do not implicate the APA. They emphasize that DCA's complaint concerns the noncompete agreement which, although referencing the APA seventeen times, lacks any express provision stating that disputes are governed by the APA. They further contend that the noncompete agreement is structurally distinct from the other ancillary agreements and cannot be presumed to incorporate the APA's arbitration requirement. This argument is unavailing.

Unlike the noncompete agreement, the promissory note and license agreement—the principal agreements at issue in the amended counterclaim—

explicitly contain provisions that defer to the APA in the event of a conflict. The trial court correctly determined that these claims necessarily invoke the APA and are therefore subject to the arbitration clause. The BCDC Parties further argue that the doctrines of collateral estoppel, judicial estoppel, and the law of the case should not apply. We consider each in turn.

Collateral Estoppel, Law of the Case Doctrine, and Judicial Estoppel

Collateral estoppel bars re-litigation of an issue previously adjudicated where:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012). (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

The BCDC Parties argue that collateral estoppel fails on the first element, claiming the present dispute centers solely on the promissory note, whereas prior orders involved the APA. However, this framing misstates the substance of the Padovano Order. In those October 2023 proceedings, DCA asserted claims based both on the APA and on an alleged breach of the promissory note. At that

12

time, DCA maintained the promissory note should be interpreted independently of the APA. That position mirrors the one the BCDC Parties now assert on appeal, and the issue is identical.

Although the court's reasoning in its September 27, 2024 decision aligns closely with the doctrine of collateral estoppel, the record reflects that the judge performed an independent analysis of each claim asserted by the BCDC Parties. As to count one (breach of contract concerning the promissory note), the judge stated, "The Law Division and this [c]ourt have already made a finding with respect to that count. It's dismissed." With respect to counts two (declaratory judgment) and three (breach of contract), both involving the license agreement, the judge found the agreement "otherwise incorporates all of the terms of the [APA], which includes the arbitration provision." The judge extended his analysis to the noncompete and consulting agreements, concluding that they too were governed by the APA's arbitration clause. Accordingly, counts two and three were dismissed. Counts four (declaratory judgment) and five (breach of contract), based on the consulting agreement, were likewise dismissed for the same reason. Count six (invasion of privacy and misappropriation of likeness) was deemed moot and dismissed. Although these rulings were consistent with the Padovano Order, the record makes clear that the judge conducted an

independent assessment of the prior rulings set forth in the Padovano Order before dismissing the claims.

The BCDC Parties also contend that the law of the case doctrine should not apply. The doctrine generally obligates a court to adhere to prior rulings within the same litigation unless there is a compelling reason to depart. See N.J. Div. of Youth and Fam. Serv. v. J.D., 417 N.J. Super. 1, 24 (2010). As explained in Slowinski v. Valley Nat'l Bank, 264 N.J. Super. 172, 179 (App. Div. 1993), an "unreversed decision of a question of law or fact made during the court of litigation . . . settles that question for all subsequent stages of the suit." The doctrine is discretionary and "should be applied flexibly to serve the interests of justice." State v. Reldan, 100 N.J. 187, 205 (1985). Courts must balance adherence to prior rulings against "factors that bear on the pursuit of justice." State v. K.P.S., 221 N.J. 266, 276 (2015) (quoting Lombardi v. Masso, 207 N.J. 517, 538 (2011)).

There is no indication that the Chancery Division based its ruling on the law-of-the-case doctrine. Rather, the judge conducted an independent and reasoned analysis of the agreement at issue and reached his conclusion without relying solely on prior rulings. Accordingly, this argument lacks merit.

14

DCA further argues that the BCDC Parties are judicially estopped from seeking adjudication of their counterclaims in the Chancery Division after previously obtaining a ruling compelling arbitration. Judicial estoppel prevents a party from asserting a position inconsistent with one previously accepted by the court. In re Borough of Englewood Cliffs, 473 N.J. Super. 189, 201 (App. Div. 2022); accord Kimball Int'l v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000). The doctrine serves to protect "the integrity of the judicial process" by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996).

Here, the BCDC Parties successfully argued in the initial litigation that all disputes between the parties were subject to arbitration, resulting in the Padovano Order. Now, they seek to avoid arbitration and have their own claims adjudicated in court. Although they attempt to distinguish their current position by asserting that the prior arbitration demand was limited to claims arising under the APA, the distinction is unpersuasive. The promissory note, the foundation of their amended counterclaims, expressly incorporates the APA's terms in the event of a conflict. The BCDC Parties' reversal of position is directly contrary to the argument they previously advanced and on which they prevailed. Under

15

these circumstances, judicial estoppel bars their current attempt to proceed in court.

B.

The BCDC Parties argue that the dismissal of their amended counterclaim and third-party complaint results in irreparable harm, as it compels them to arbitrate while DCA's claim under the noncompete agreement proceeds toward trial. They contend that bifurcating resolution of these related matters between arbitration and litigation may yield inconsistent outcomes and impose unnecessary expense and inefficiency on both parties.

Although their concerns regarding judicial economy and duplication of effort are not without basis, they do not warrant reversal. As Judge DiBiasi aptly observed: "The [APA] compels arbitration, and New Jersey law favors arbitration as a means of resolving disputes. Arbitration provisions are liberally upheld." The APA is the foundational agreement among the parties. The ancillary agreements—including the promissory note, license agreement, and consulting agreement—derive from it but are indeed ancillary. As such, the trial court appropriately enforced the arbitration clause.

C.

The BCDC Parties next argue that DCA waived its right to compel

A-0293-24

arbitration by actively litigating in the trial court. However, this contention was not raised below and is advanced for the first time on appeal. It is well-settled that appellate review is generally limited to issues presented to the trial court, absent jurisdictional concerns or matters of substantial public interest. Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2022); see also N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 631 (App. Div. 2012). Because the waiver argument does not implicate jurisdiction and raises no broader public interest, it is not properly before this court and will not be considered.

DCA also asserts that the appeal of the September 27, 2024 order was untimely. It contends that the August 2, 2024 order, decided by the same court and concerning overlapping claims, should be deemed the operative, appealable order. This argument misconstrues the proceedings.

Under Rule 2:2-3(b), orders compelling arbitration, regardless of whether the action is dismissed or stayed, are appealable as of right. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020). The August 2, 2024 order addressed claims grounded in both the APA and the promissory note. The BCDC Parties neither moved for reconsideration nor appealed that order. In contrast, the September 27, 2024 order addressed an amended pleading and expanded the trial

17

court's prior reasoning to encompass the ancillary agreements. Although the result was the same—compelled arbitration—the scope of the ruling was broader, and the legal analysis differed. Accordingly, the September 27 order is the final operative order from which this appeal arises.

With the September 27 order as referent and based on the procedural status of this case, we are constrained to direct the trial court to enter a stay of the underlying action. We direct this because, pursuant to 9 U.S.C. § 3, proceedings referrable to arbitration "shall on application of one of the parties [be] stay[ed] . . . until such arbitration has been had in accordance with the terms of the agreement . . . ." Further, in Kleine v. Emeritus at Emerson, "[t]he motion judge . . . 'dismissed' the 'matter' from 'th[e] [c]ourt's jurisdiction.' Even if the judge correctly ruled, the claims against defendant should only have been stayed, not dismissed." 445 N.J. Super. 545, 554 n.13 (App. Div. 2016) (alteration in original) (citing N.J.S.A. 2A:23B-7(g)). N.J.S.A. 2A: 23B-7(g) reads: "If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." (Emphasis added).

In sum, we affirm as to compelled arbitration, vacate as to the dismissal,

and direct the trial court to stay the matter until arbitration is completed.

Affirmed in part; vacated in part; and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division